**UNITED STATE BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

In re:                                              :
                                                    :
ABTIN VAZIRI                                        :       Bankruptcy Case No.: 25-12110-BFK
   Debtor.                                     :
                                                    :

---

CYRUS AMIRI                                         :
                                                    :
          Plaintiff,              :
                                                    :
v.                                                  :       Adversary Proceeding No.: 26-1002--BFK
                                                    :
ABTIN VAZIRI                                        :
                                                    :
          Defendant.              :

---

**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

COMES NOW the Defendant  Abtin Vaziri, by counsel, and moves for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure, and in support, states as follows:

Plaintiff seeks to deny the Debtor's discharge pursuant to 11 U.S.C. 727(a)(4) on the grounds that Mr. Vaziri made false oaths in his Bankruptcy Schedules and Statement of Financial Affairs (SOFA).  The Complaint begins by listing a litany of issues regarding Mr. Vaziri's prior Chapter 13 case (see ¶¶ 5-10).  Paragraph 11 of the Complaint identifies seven different allegations regarding inaccuracies in the forms filed by the Debtor, but contains few actual facts to support its conclusory allegations and accusations.  Defendant propounded Interrogatories asking the Plaintiff to set forth not only the specific factual inaccuracies alleged, but also the materiality of the alleged inaccuracies and any evidence that they were made willfully and with the intent to deceive.   Plaintiff's Interrogatory Answers (Ex. A) do very little

David C. Jones, Jr., VSB 37483
10167 Jones Street, Suite 301-A
Fairfax, Virginia 22030
703-273-7350
Counsel for Defendant

to expand upon the conclusory allegations of the Complaint.  More importantly, they offer no facts or analysis regarding the materiality of the alleged false statements and no facts regarding the Debtor's intent.  Plaintiff took no depositions and did not propound any discovery on the Defendant.  The only discovery undertaken by Plaintiff was a series of subpoenas seeking information regarding Debtor's gambling habits.  A careful examination of Plaintiff's evidence with respect to each allegedly false statement reveals that there is no substance behind any of the accusations.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Defendant propounded Interrogatories on the Plaintiff.  Plaintiff's response is attached hereto as Exhibit A.

2.      Defendant served a set of Requests for Admissions (Ex. G) on the Plaintiff on March 4, 2026.  No response was received from the Plaintiff.

3.      The discovery cutoff in this case was May 31.  Plaintiff did not serve any discovery requests on the Defendant.  Nor did it notice any depositions.

4.      Plaintiff served almost a dozen subpoenas duces tecum on casinos, online betting companies, and banks seeking information related to Defendant's gambling activities.  The subpoenas had a response deadline of May 24.  Plaintiff has not supplemented its Interrogatory answers or provided Defendant any additional documents which were received pursuant to the subpoenas.  Plaintiff has not filed any motions to compel related to the subpoenas, nor has it sought to extend the discovery cutoff.

5.      Defendant Abtin Vaziri was the debtor in a prior Chapter 13 case in this Court (No. 23-10896).  A review of the Court's docket in that case reveals the following:

a.   Mr. Amiri moved to dismiss the Chapter 13 case with prejudice (see Docket Entry #38);

b.   The Court conducted an evidentiary hearing and denied the motion (#52);

c.   The Court later held a confirmation hearing (#53) and confirmed Debtor's Amended Plan (#54);

d.   Plaintiff appealed these Orders to the District Court, which affirmed Judge Kindred's rulings on both issues (#73);

e.   The Chapter 13 case was subsequently dismissed upon the Chapter 13 Trustee's Motion (#78 & #80) after Debtor lost his job.

6.   In this case, Debtor's Schedule A/B disclosed accounts with TD Bank (see line 17.3), Coinbase (line 17.2), and Robinhood (line 18).

7.   In response to Question 20 of the Statement of Financial Affairs Debtor indicated that he had a checking account with Bank of America account (0863) which was closed in April 2025.  Plaintiff admits that the closing date listed is correct (Ex. A - response to Interrogatory #1, Ex. G, Request #3).

8.   Debtor was employed at Dulles Motorcars; his last day of employment was January 24, 2025 (Ex. C ¶3 and Ex. F).

9.    In connection with his employment at Dulles Motorcars, Debtor received bonuses from Chrysler which were loaded onto a Visa prepaid debit card with an account ending in 2990. The documents attached hereto as Exhibit E are a true and accurate record of the transaction history of the account.  These documents were obtained by the Debtor after this Adversary Proceeding was filed (Ex. C ¶3).

10.      On January 24, 2025, Debtor transferred the full balance from the prepaid card to his Bank of America checking account (Ex. E & Ex. D).  The documents attached hereto as Exhibit D are excerpts from the Debtor's bank account statements showing the receipt of the transfers from the prepaid card.

11.      On February 4, 2025, after Debtor had left Dulles Motorcars, a value load of $0.52 was added to the prepaid card.  At the time of filing, the prepaid card had a balance of $0.52, which was not listed on Debtor's Schedule A/B.

12.      The Debtor was not aware that there was any remaining balance on the prepaid card at the time he filed his Bankruptcy schedules (Ex. C ¶3).  Plaintiff has no evidence that Mr. Vaziri was aware that $0.52 had been loaded onto the card after he transferred the balance to his bank account or that he had any intent to deceive (Ex. A, answer to Interrogatory #2).

13.      At the time of filing, Debtor had been employed with Guaranteed Rate for one month.  The projected income listed on Schedule I was his guaranteed draw (see Ex. C ¶4).  The $300 in expected family support listed on line 8c of Schedule I was Debtor's best guess as to how much support he would need from his family (Ex. C ¶4).

14.      On Schedule J, Debtor does not list any expenses for rent or utilities.  In section 24, he indicates that "Debtor hopes to make more money soon. He is living with family and paying no rent, but hopes to contribute once he makes more income."

15.      Plaintiff has no evidence that the estimated $300 per month in family support was inaccurate or that Mr. Vaziri had any intent to deceive (Ex. A, answer to Interrogatory #3).

16.      With his Initial Disclosures, Defendant provided the Plaintiff copies of account statements for his TD Bank and Bank of America accounts as well as the Coinbase and Robinhood accounts.

4

17.     On his Statement of Financial Affairs, Debtor accurately lists all income from employment in response to Question 4 (Ex. G, #4-7).  Plaintiff's allegations as to inaccuracy relate only to Question 5 (see Ex. A response to Interrogatory #4: "Question number 5 of the SOFA was answered incorrectly.").

18.     In order to support himself during the time he was unemployed, Debtor sold the assets held in the Coinbase and Robinhood accounts, leaving both with nominal or no balance at the time of filing (Ex. C ¶5).

19.     The proceeds of these sales are not listed on the SOFA.

20.     Debtor provided his attorney six months of statements for the Coinbase and Robinhood accounts prior to filing (Ex. B ¶6 and Ex. C ¶5).

21.     After reviewing these statements, Debtor's attorney Ms. Morgan determined that the proceeds of those asset sales were not income which was required to be disclosed on the SOFA or means test (Ex. B ¶6).

22.     Mr. Vaziri relied on the advice of counsel that the proceeds from the sale of his holdings in the Coinbase and Robinhood accounts were not income which was required to be listed on this SOFA or means test (Ex. C ¶5).

23.     Debtor's Bank of America account statements show a transfer of $100 was made to DraftKings on October 22, 2024.  Plaintiff has no other evidence of any gambling losses which should have been disclosed on the Statement of Financial Affairs (see Ex. A response to Interrogatory #6).

24.     Mr. Vaziri did not recall that transaction at the time he executed his Bankruptcy forms and schedules, otherwise he would have disclosed it (Ex. C ¶7).

5

25.     In response to question 9 on the Statement of Financial Affairs, Debtor disclosed a pending garnishment in Loudoun Circuit Court in the matter of Tower Federal Credit Union v. Vaziri, CL22007234-01.  Nothing relating to the garnishment is listed in response to question 10, nor are the garnished funds listed on Schedule A/B.

26.     Exhibit H is a copy of documents from the Loudoun Circuit Court in relation to a garnishment issued the matter of Tower Federal Credit Union v. Vaziri, CL22007234-01.  These records reflect the following:

a.     The garnishment was filed in December 2022 against Debtor's employer Dulles Motorcars with a hearing date on June 16, 2023;

b.     Following Debtor's Chapter 13 filing on May 30, 2023, a Suggestion in Bankruptcy was filed and the Court entered an Order dated June 7, 2023 dismissing the garnishment;

c.     On August 15, 2025, Tower FCU filed a Motion asking the Court to reinstate the garnishment;

d.     On August 19, 2025 the Court entered an Order reinstating the garnishment case to the Court's docket;

e.     On August 29, 2025, Tower FCU filed a Motion for Disbursal of the garnished funds;

f.     On October 3, 2025 the Court entered an Order directing disbursal of the garnished funds to Tower FCU;

27.     Prior to filing his Bankruptcy, Debtor received a letter from the Loudoun Circuit Court relating to funds being held by the Court pursuant to a garnishment from 2024 (Ex. I) and

6

a Praecipe from counsel for Tower FCU (Ex. J) giving notice of a hearing on Tower's Motion to

Disburse those funds. Debtor gave both documents to Ms. Morgan (Ex. B ¶8, Ex. C ¶8).

28. Ms. Morgan ensured that the garnishment was properly disclosed on the SOFA in

response to question 9, but did not list the garnished funds in response to question 10 because

they were withheld in 2023. The garnished funds were not listed on Schedule A/B because Ms.

Morgan did not believe they were property of the bankruptcy estate since they had been

garnished back in 2023 (Ex. B ¶8).

**LEGAL ARGUMENT**

**A. Standard of Review**

1) <u>Summary Judgment</u>

Under Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate

where there is no genuine dispute as to any material fact, and the moving party is entitled to

judgment as a matter of law. Summary judgment "is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed 'to secure the just, speedy and inexpensive determination of every action." *Celotex

Corp. v. Catrett*, 477 U.S. 317, 327 (1986). See also *Fitzgerald v. Bin Hao*, Adversary

Proceeding 22-01095-BFK, p. 7 (Bankr. E.D. Va. May 16, 2023). The burden of proof is on the

moving party to demonstrate that there are no material facts in dispute, and that it is entitled to

judgment as a matter of law. *Celotex* at 322-24. However, summary judgment may be granted

when the nonmoving party lacks evidence to support its claims. "One of the principal purposes

of the summary judgment rule is to isolate and dispose of factually un-supported claims." *Id.* at

323. Pursuant to Rule 56(e) "a party cannot rest on the allegations contained in his complaint in

opposition to a properly supported summary judgment motion made against him." *First National

Bank of Arizona v. Cities Service Co*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968);

7

*Spencer Enterprises, Inc. v. U.S.*, 229 F.Supp.2d 1025 (E.D. Cal. 2001)(holding nonmoving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint).

While the Court must resolve factual issues in controversy in favor of the nonmoving party, "That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).  A party is not "entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint." *First National Bank of Arizona* at 289.  "To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is a genuine issue for trial." *In re Franklin Equipment Co.*, 418 B.R. 176 (Bankr. E.D. Va. 2009)(citing  *Celotex*).  "Neither conclusory allegations, speculative scaffolding of one inference upon another, nor the production of a 'mere scintilla of evidence' in support of a nonmovant's case suffices to forestall summary judgment. *Moody v. Arc of Howard Cty., Inc.*, 474 F. App'x 947, 949 (4th Cir. 2012)." *Barrett v. Rogers (In re Lawrence)*, Adv. Pro. No. 19-03082-KRH, Case No. 17-30335-KLP, Case No. 17-30339-KRH, p. 7  (Bankr. E.D. Va. May 14, 2020). Thus, to survive summary judgment, a plaintiff must have actual evidence supporting its claims, not merely conclusory allegations.

2)   Denial of Discharge Under 727(a)(4)

The grounds for denial of discharge in 11 U.S.C. 727 are "designed to prohibit the granting of a discharge to debtors who 'play fast and loose with their assets or with the reality of their affairs.' *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir.1994)." *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 783  (Bankr. E.D. Va. 2012).  "Denial of discharge is a severe sanction and should be reserved for instances in which a debtor contravenes the basic

compact underlying the Code's promise of a 'fresh start.'" *Van Robinson v. Worley*, 849 F.3d 577

(4th Cir. 2017).

> Because denying a debtor's discharge is an "extreme" and "drastic" penalty, objections to discharge pursuant to Section 727 are construed strictly against the objecting party and liberally in favor of the debtor. *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir.1996). The party objecting to a debtor's discharge must carry the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4005.

*Webb v. Isaacson*, 478 B.R. 763, 782 (Bankr. E.D. Va. 2012).  "Courts have noted that 'a total

bar to discharge is an extreme penalty.' The reasons for denial of a discharge must be real and

substantial rather than technical and conjectural." *In re Duncan*, 318 B.R. 648, 652 (Bankr. E.D.

Va. 2004).

The Fourth Circuit set forth the elements required to deny a discharge pursuant to

§727(a)(4), "[i]n order to be denied a discharge under this section, the debtor must have made a

statement under oath which he knew to be false, and he must have made the statement willfully,

with intent to defraud." *Williamson v. Fireman's Fund Ins. Co. (In re Williamson),* 828 F.2d 249,

251 (4th Cir. 1987).  Additionally, the false statement must relate to a "material matter." *Id.*

"A statement or an omission is material if it adversely affects the ability of the trustee or

creditor to discover other assets or fully investigate the debtor's pre-bankruptcy dealings and

financial condition." *In re Jalajel*, No. 09-11453, p. 6 (Bankr. E.D.Va 2010).  "The subject

matter of a false oath is 'material' and thus sufficient to bar discharge if it bears a relationship to

the debtor's business transactions or estate, concerns the discovery of assets or business dealings,

or the existence and disposition of property." *Wachovia Bank, Nat'l Ass'n v. Voccia (In re*

*Voccia)*, 477 B.R. 625, 633 (Bankr. E.D. Va. 2011)(citation omitted).  A material fact is one

which "might affect the outcome" of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

Mere mistakes in a debtor's schedules are not sufficient grounds for a denial of discharge. "[C]ourts acknowledge that 'petitions, schedules, and statements are often filed hastily, memories fail, and innocent mistakes and omissions can occur,' and will be understanding of that reality so long as the evidence does not reveal an underlying intent to deceive." *Webb v. Isaacson* at 785(citation omitted). "Given the scope of information requested and the level of detail that is required, some mistakes are understandable, and perhaps even inevitable." *McDow v. Loussede*, No. 10-1020, p. 7, (Bankr. E.D.Va 2010). A "gross lack of attention to detail" or "negligence, however censurable, is not the same as an intent to deceive." *In re Quispe*, No. 09-17914, p. 14 (Bankr. E.D.Va 2010). When "there is no evidence to suggest that the omission was other than an oversight or lack of attention to detail" the Court should not infer fraudulent intent. *In re Chen*, No. 08-17862, p. 14 (Bankr. E.D.Va 2009). When there is no obvious reason why a debtor would have concealed a fact, the Court should conclude that the omission was negligence, rather than fraud. *Id.* If a plaintiff fails to introduce evidence that omissions were made fraudulently, the Court should enter judgment in favor of the Defendant in a case under §727(a)(4). *In re Marrin*, Case No. 08-32473-DOT, Adv. Pro. No. 08-3116-DOT, at p. 6 (Bankr. E.D.Va. 11/3/2009).

**B. Factual Analysis**

The many allegations regarding Debtor's prior Chapter 13 case (No. 23-10896) are not germane to this case, nor do they tend to prove any wrongdoing by the Debtor. All of these issues were considered and ruled upon in that case. Mr. Amiri's motion to dismiss with prejudice was denied by Judge Kindred after an evidentiary hearing. The Court later confirmed Debtor's Amended Plan after a contested confirmation hearing. On appeal, the District Court affirmed Judge Kindred's rulings on both issues. The Court's prior rulings are *res judicata* as to those issues and cannot be relitigated in this case. "Collateral estoppel bars the 'successive

litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Fitzgerald v. Bin Hao* at 8.

Looking next at the allegations which Plaintiff raises regarding the forms and schedules in this case, it is clear that Plaintiff has no evidence to suggest that the Debtor knowingly made any material misstatements, let alone that he did so with the intent to defraud.  Paragraph 11 of the Complaint sets forth seven separate purported inaccuracies – all of which are nothing more than summary conclusions.  Defendant attempted to elicit the factual basis for these allegations by way of specific interrogatories related to each alleged inaccuracy.   Rather than setting forth specific facts or identifying documents which support the various allegations, Plaintiff's Interrogatory answers mostly restate the conclusory allegations in the Complaint without adding any meaningful detail.  Plaintiff chose not to be detailed in its responses and must now depend on its answers as the Court considers this Motion.  A careful analysis of the evidence which Plaintiff identifies with respect to each of the seven alleged misstatements reveals that none has a sufficient basis in fact to survive Summary Judgment.

- Closing of Bank of America Accounts

In response to Interrogatory #1, Plaintiff acknowledges that the Bank of America accounts were closed in April 2025.  Thus, Defendant did not make a false oath with respect to the closing date of his Bank of America accounts in his response to Question 20 of his Statement of Financial Affairs ("SOFA").

- Visa Prepaid Card

Plaintiff alleges that Mr. Vaziri made a materially false oath because he did not disclose a Visa Prepaid card on his Schedule B/C.  In response to Interrogatory #2, Plaintiff identifies

11

transfers made from a prepaid card to the Debtor's bank account in late 2024 and early 2025

(excerpts of the bank statements containing the specific transactions are attached as Ex. D) as

proof that Debtor was utilizing a prepaid card.  However, despite possessing copies of records

relating to the prepaid card (Ex. E) which show the card's transaction history and balance,

Plaintiff's answer omits the fact that as of the date of filing the card had a balance of $0.52 and

offers no facts to suggest that the failure to disclose the account was intentional or material.

To be actionable under 727(a)(4), the failure to disclose the existence of a financial

account must be material to the administration of the case.  While

> "there is no de minimis exception to the Bankruptcy Code's disclosure
> requirements." *Dean v. McDow*, 299 B.R. 133, 140 (E.D. Va. 2013). This is not to
> say that materiality does not matter. Rather, a bank account or a cryptocurrency
> account that might have a very low or even a negative balance on the petition date
> can be highly useful to the Trustee and the creditors in reconstructing the Debtor's
> financial condition and transactions leading up to the bankruptcy case.

*Fitzgerald v. Bin Hao*, at 14.  The account records (Ex. E) demonstrate that all of the funds from

the prepaid card were transferred to Plaintiff's Bank of America checking account on January 24,

2025 and that an additional $0.52 was deposited thereafter.  Nothing related to the prepaid debit

card could possibly have been useful to the Trustee in examining the Debtor's finances.  Thus,

the failure to disclose the account was not material.

Furthermore, there is no evidence to suggest that the failure to disclose this account was

intentional.  In his Affidavit (Ex. C), Mr. Vaziri explains that he received funds on the prepaid

card in connection with his previous employment with Dulles Motorcars, that he transferred

those funds to his bank account, and that he believed that there were no funds remaining on the

card at the time he filed his Bankruptcy Petition.  He further explains that in preparing his

defense to this adversary proceeding he obtained records relating to the prepaid card (Ex. E)

which contain his transaction history and show that as of the date of filing the card had a balance

12

of $0.52.  Given the small balance remaining on the card and the timing of the last deposit, there is no reason to disbelieve Debtor's statement that he believed he had transferred the full balance to his bank account and was not aware that the additional $0.52 had been deposited into the account, particularly since he disclosed several other accounts with small or no balances.  The Court should follow the rule set forth in *In re Chen* that when there is no evidence of intent to deceive or any obvious reason why a Debtor would conceal an asset, the Court should conclude the omission was inadvertent.

- Family Support on Schedule I

In its Complaint, Plaintiff asserts that Defendant made a false oath by listing only $300 in financial support from his family when the actual support he receives is far greater.  In response to Interrogatory 3, the only fact which the Plaintiff identified in support of its claim is the "thousands and thousands" of dollars he received during his prior Chapter 13 case.  Despite being in possession of Mr. Vaziri's bank statements (which were provided in connection with Defendant's Initial Disclosures), the Plaintiff could not identify any facts to prove that Plaintiff actually received more support than he disclosed.  Instead, Plaintiff simply states "It seems odd that this extra money suddenly just stopped pouring in."  Plaintiff carries the burden of proof and its skepticism is not enough to create a dispute as to a material issue of fact which would survive summary judgment.

Furthermore, Schedule I is by its nature a forward-looking estimate of a debtor's future income, rather than a statement of an existing fact.  Plaintiff offers nothing to suggest that Mr. Vaziri's estimate of the amount of future support he would be receiving was not made in good faith, particularly considering that he had just started back to work.  Schedule J discloses substantial non-monetary support from his family - no amounts are listed for rent, utilities, or

property upkeep.  On line 24, Debtor indicates "He is living with family and paying no rent, but hopes to contribute once he makes more income."  Read together, Schedules I & J disclose the extent of support which Debtor was receiving from his family and what he anticipated to receive moving forward.  In his affidavit, Debtor confirms that the $300 figure was his best estimate of the support he would need in the near future.  Even if Debtor was overly optimistic in his estimate as to how much support he would need, there is no reason to believe that he had any intent to deceive the Court.

- Disclosure of Income on SOFA

The Complaint makes sweeping assertions that Debtor failed to disclose all of his income for the years 2023-2025 on his Statement of Financial Affairs (SOFA).  Plaintiff asserts that Debtor earned "at least $40,00.00" from sources beyond his earnings from work.  The Complaint also avers that in 2024 and 2025, Defendant had earnings from investments which were not disclosed.  The factual basis for this claim is that deposits were made into Debtor's bank account from Robinhood and Coinbase.  However, the Complaint contains no specific factual allegations to support its conclusory allegation that these deposits were income which Debtor was required to disclose on his SOFA.

In order to elicit the factual basis for this claim, Plaintiff propounded Interrogatory #4.  Plaintiff's response is that "A review of Debtor's Bank of America bank records reveal that the following statement is true (one needs only to simply review the deposits made into the account each month):" followed by cutting and pasting the allegations from the Complaint, adding the following:

> Question number 5 of the SOFA was answered incorrectly. The answer did not Disclose the additional sources of income beyond the Debtor's 9-5 job. The answer is false in that is did not disclose his earning from crypto and stock, and other Unnamed sources of income beyond his employment with Dulls Motorcars.

See Ex. 1.  Accompanying his Initial Disclosures, Defendant provided the Plaintiff copies of statements for his Robinhood and Coinbase accounts as well as his bank statements, yet the Plaintiff's answer fails to point to any specific transactions to support its conclusory allegations. Simply saying that the bank statements support Plaintiff's claim is not sufficient to satisfy the *In re Franklin Equipment Co.* standard of going  "beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is a genuine issue for trial."

Interrogatory #4 also asks the Plaintiff to "explain why you believe that those amounts were income which Debtor was required to disclose (as opposed to the transfer or liquidation of an asset)."  Nothing in the Plaintiff's response addresses this question.  By contrast, the Debtor's attorney gives a detailed explanation of why no income is listed on the SOFA from those transactions (see Ex. B).  Counsel reviewed the accounts with the Debtor and determined that the sales were simply the liquidation of an asset and that there did not appear to be any profits to disclose on the SOFA.  Ms. Morgan is correct in her legal position -  the use of the term "income" in the Bankruptcy Code generally follows the IRS definition of income as set forth in 26 U.S.C. 61(a) "gross income means all income from whatever source derived."   This definition goes on to clarify that it includes "(3) Gains from dealings in property" – rather than the full sales price of an asset.  Plaintiff's contention that Debtor was required to disclose funds he received from liquating assets in response to Question 5 of the SOFA has no legal basis.  Nor does the Plaintiff have any proof that there were any profits from these sales which should have been disclosed.

Furthermore, Plaintiff has no evidence to support its bare allegation that Debtor had any intent to deceive.  As set forth in the Affidavit of Ashley Morgan (Ex. B), the decision not to list the transactions at issue was made in reliance on the advice of counsel.  Unless a Debtor acts in

15

bad faith, "reliance on counsel generally absolves a debtor of fraudulent intent, *see In re Arnold*, 369 B.R. at 272" *Van Robinson v. Worley*, at 586.  The accounts were disclosed on Schedule A/B, so there was plainly no intent to hide their existence.  Even if Ms. Morgan's advice was mistaken and the sales should have been disclosed on the SOFA, the Debtor did not act in bad faith by relying on her instructions as to what constitutes income on the SOFA.

- Accuracy of the Means Test

Defendant did not make a false oath with respect to his Statement of Current Monthly Income and Means Test Calculation (Official Form 122A-1, etc.) regarding his CMI.  As is set forth in the prior section, the sale of assets is not income, and Mr. Vaziri was not required to include the money from the sales in his means test calculation.  Additionally, his reliance on the advice of counsel as to the proper calculation of the means test negates any intent to deceive.

However, even if Debtor miscalculated his CMI, that error was immaterial because he would still have been well under the means test threshold.  In response to Interrogatory #5, Plaintiff identifies $10,400 of income which should have been included in the means test.  Adding that amount to the Debtor's actual income would increase his total monthly income by $1,733.33 for an updated total of $2,179.16 per month.  Annualized to $26,149.92, the Debtor's CMI would be well below the median income for a household of 1 in Virginia ($77,420).  Since Debtor would still have qualified to file Chapter 7, the alleged miscalculation of the means test was not material.  Additionally, the Debtor had nothing to gain from excluding the sale proceeds from his means test – thus, there is no evidence to support any inference of fraudulent intent.

- Gambling Losses

The Complaint makes sweeping allegations regarding Debtor's past gambling habits and asserts that Defendant's answer to Question 15 of his Statement of Financial Affairs ("SOFA")

16

regarding losses from gambling was a false oath because "Debtor did not suddenly stop gambling in October of 2024."  The Complaint alludes to 2021 divorce complaint which contained allegations of prior gambling and asserts it continued during the Chapter 13 case.  However, in response to Interrogatory #6, Plaintiff identifies a single bet of $100 made on October 22, 2024 - 356 days prior to filing.  The bank records Plaintiff references actually show a transfer of $100 from Debtor's Bank of America Account to a DraftKings account.  Plaintiff has no evidence that there were any bets, let alone actual gambling losses which would have required disclosure.  However, even if this transaction should have been disclosed, Plaintiff has not offered any evidence to suggest that Debtor knowingly failed to disclose the transfer, that his failure to do so was material, or that it was done with the intent to deceive.  In his Affidavit, Mr. Vaziri states that he mistakenly thought that it had been over a year since he had used the DraftKings account and that his mistake was an oversight and not done with any intent to deceive the Court.  Given the small amount at issue and the fact that it was very nearly outside the disclosure window, it is far more likely that the omission was inadvertent.  Inattention or even negligence does not prove an intent to deceive. *In re Quispe, supra.*

- Loudoun County Garnishment

The Complaint alleges that Defendant made a false oath in his answer to Question 10 of his Statement of Financial Affairs ("SOFA") and on Schedule A/B by failing to disclose that shortly before this Chapter 7 case was filed, the Loudoun Circuit Court entered an Order directing the disbursal of funds held pursuant to a wage garnishment.  Documents from the Loudoun Circuit Court were produced by the Plaintiff in response to Defendant's Request for Production of Documents and are attached as Exhibit F.  These documents reflect that $12,134.85 was withheld from Mr. Vaziri's wages pursuant to a garnishment issued in 2023 and

17

that said funds were then held by the Clerk of the Circuit Court.  In August 2025, Tower Federal Credit Union filed a Motion requesting that the garnishment be reinstated and the funds released to it.  On October 3, 2025, the Circuit Court entered an Order releasing the funds to Tower FCU.

Mr. Vaziri advised Ms. Morgan of the correspondence from the Circuit Court and the Praecipe giving notice of the motion (Ex. C ¶8).  The garnishment is disclosed as "pending" in response to Question 9 of the SOFA, although there is no indication as to its disposition.  The Court's records prove that the funds were withheld in 2023, so Ms. Morgan correctly determined that they should not have been listed in response to Question 10 of the SOFA.  Thus, the question at issue is whether the failure to list the garnished funds on Schedule A/B was a materially false oath and whether it was made with malicious intent.

In response to Interrogatory #7, the Plaintiff sets forth the relevant facts relating to its contention that Debtor failed to disclose the garnishment, but fails to offer any facts suggesting that the omission was material or that it was done intentionally and with intent to mislead.  Ms. Morgan's affidavit indicates that she did not consider the funds to be property of the estate – negating the requirement that they be listed on Schedule A/B.  Assuming *arguendo* that she is incorrect, Mr. Vaziri's reliance on her advice is reasonable under the circumstances.  He gave his attorney the documents in his possession and trusted her expertise as to where in his paperwork the garnishment should be listed.  Considering that the garnishment was disclosed, it is illogical to infer any fraudulent intent by Mr. Vaziri.  At worst, failing to list the garnished funds on Schedule A/B was the type of mistake which *McDow v. Loussede* deemed "understandable, and perhaps even inevitable."

### C.  Conclusion

The Plaintiff has thrown out a variety of conclusory allegations regarding the veracity of the Debtor's schedules and forms in this case, presumably in the hope that something might

18

stick.  However, when pressed for the facts underlying its claims, the Plaintiff has produced

absolutely nothing of any substance.  In considering this motion, the Court must hold Plaintiff to

its burden of proof and require evidence, not merely allegations.  Interrogatory answers which

restate the allegations of the Complaint do not create valid issues of fact for trial because "a party

cannot rest on the allegations contained in his complaint in opposition to a properly supported

summary judgment motion made against him." *First National Bank of Arizona, supra.*  Factually

unsupported claims should be disposed of at summary judgment.  *Celotex* at 323.  Here, the

Plaintiff has nothing but conclusory allegations with no factual support.  The sum of Plaintiff's

evidence is the failure to disclose a prepaid debit card with a $0.52 balance, an estimate of future

support that differs from what was received during the Ch. 13 case, not disclosing asset sales as

income based on the advice of counsel, and the failure to list garnished funds on Schedule A/B

while listing the garnishment on the SOFA.  At most, these minor inaccuracies fall far short of

the standard established for denying a discharge.  Accordingly, the Court should enter summary

judgment in favor of the Defendant.

WHEREFORE, the Defendant respectfully requests that the Court enter summary

judgment in his favor and prays that it dismiss the Complaint with prejudice.

Respectfully Submitted,

/s/David C. Jones, Jr.
David C. Jones, Jr., VSB 37483
10617 Jones Street, #301-A
Fairfax, Virginia  22030
(703) 273-7350
davidcjonesjr@gmail.com

19