**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**In re:**

| | |
|---|---|
| **Abtin Vaziri** | **Case No. 25-12110-BFK** |
| **Debtor** | **Chapter 7** |

**Cyrus Amiri**

|  |  |
|---|---|
| **Plaintiff,** | **Adversary Case No. 26-1002-BFK** |

**Vs.**

**Abtin Vaziri**

**Defendant/Debtor**

**<u>Plaintiff's opposition to motion for summary judgment filed by the Debtor</u>**

Comes now, Cyrus Amiri, the Plaintiff, by undersigned counsel, and in support of his opposition to the motion for summary judgment (the MFSJ) filed by the Debtor asserts the following:

<u>**Summary of Argument**</u>

The Debtor's legal arguments in support of his motion for summary

judgment can be summarized as follows: Other than blanket accusations made in

your complaint the Plaintiff has presented no evidence to support any of his

allegations. Moreover, any allegations about false statements as they relate to the

Debtor's prior chapter 13 case is not relevant to this adversary proceeding. In

addition, no false statements have been made in this case by the Debtor.

Furthermore, to the extent one might conclude that certain omissions do exist in

Debtor's schedules, those omissions are mere technicalities, minor errors as they were. Finally, to the extent that certain omissions are treated as material, the fact of the matter is that the information was disclosed to my bankruptcy attorney, and I relied on the advice of counsel. Thus, my failure to disclose should not count against me since I have immunity. You can blame my attorney, but do not blame me.

The Plaintiff's position is that you have to know one's past in order to understand the present. Meaning, a Debtor's actions and conduct in a prior case are relevant in a subsequent case. As for evidence beyond the allegations made in the Complaint, The Plaintiff relies on Debtor's schedules in the present case and prior bankruptcy case, along with extensive bank statements that collaborate that falsehoods and omissions that were made by Debtor in both cases. The repeated falsehoods and omissions are far from trivial. Finally, the advice of counsel defense is a shield, but only to a point. At some point, the Debtor has to stand on his own two feet; when certain answers on your schedules are patently false, the "attorney made me do it" defense will not suffice.

### Statement of undisputed material facts

1. On May 30, 2023, the Debtor filed a chapter 13 bankruptcy petition with this court (the court may take judicial notice of the schedules)

2. On January 18, 2024, the parties appeared before the bankruptcy court for an evidentiary hearing on Plaintiff's motion to dismiss chapter 13 with prejudice (attached transcript of that hearing identified as Exhibit 1).

3. The Debtor's chapter 13 plan was eventually confirmed on February 2, 2024 (the court may take judicial notice of this fact).

4. The chapter 13 bankruptcy case was dismissed by the bankruptcy court after the Chapter 13 Trustee filed a motion to dismiss for failure to make plan payments (the court may take judicial notice of this fact).

5. On October 13, 2025, the Debtor filed the instant chapter 7 bankruptcy petition and schedules with the court (the court may take judicial notice of the schedules filed).

6. A review of schedule A/B shows that the Debtor did not disclose his interest in a prepaid card. In fact, in his motion for summary judgment the Debtor acknowledged that much.

7. A review of Debtor's Bank of America bank statements (attached Exhibit 2 Bank of America bank statements) reveals that in 2023 the Debtor obtained beyond his paychecks from Dulles Motorcars, some $44,855 in additional "income" which consisted of various Zelle transfers from third parties, and an assortment of deposits.

8. As for the deposits into the Bank of America bank account in 2023, most are cash deposits as demonstrated by the attached deposit slips from Bank of America (attached Exhibit 3 Bank of America deposit slips).

9. None of these additional sources of income in 2023, which again amount to roughly $44,855 are disclosed in Debtor's SOFA, as "other sources of income" during this year.

10. On March 21, 2024, shortly after getting his chapter 13 plan confirmed, and without court approval, the Debtor then obtained a loan from "Cross River Bank" (more commonly known as Best Egg) for $5,688, and then subsequently, on May 28, 2024, for an additional $27,303 (Exhibit 2, Bank of America bank statements).

11. The June 2024 Bank of America bank statement reveals that the Debtor then begins to use these funds to further bolster his Robinhood investment contributions.

12. The Bank of America August of 2024 bank statement reveals that the Debtor at this point in time is beginning to enjoy income beyond his earnings from Dulles Motorcars; at this time earning from Coinbase and Robinhood are starting to materialize as the Bank of America bank statement demonstrate. (Exhibit 2)

13. The Bank of America bank statements for the September, October, November, and December of 2024 demonstrate a continuing pattern of deposits from Robinhood/Coinbase accounts into the Bank of America bank account that was not disclosed as "other sources of income" on Debtor's SOFA for 2024. (Exhibit 2)

14. The continuing failure to disclose income produced from Robinhood/Coinbase on SOFA continues into 2025 as well. The Bank statements obtained from TD Bank (attached Exhibit 4, TD Bank statements) are evidence of thousands of dollars being deposited throughout 2025 from sources such as Robinhood/Coinbase.

15. In fact, a number of cash deposits (Exhibit 5 TD Bank deposits) are also not accounted for on Debtor's SOFA for 2025.

16. None of this additional income, referring to earnings from Robinhood/Coinbase, as well as cash deposits, during the six months preceding the bankruptcy filing appears on Debtor's means test calculation. The Debtor concedes this much on page 16 of his MFSJ.

17. The Debtor asserts in his MFSJ that "In his Affidavit, Mr. Vaziri states that he mistakenly thought that it had been over a year since he had used the DraftKings account and that his mistake was an oversight and not done with any intent to deceive the Court."

18. The Debtor concedes in his MFSJ that the $12,134.85 in garnished funds that was garnished by Tower Federal Credit Union (Tower FCU), and which the Circuit Court of Loudoun County ordered an Order ten days prior to the Debtor's instant chapter 7 bankruptcy filing releasing these funds to Tower FCU was disclosed on his schedule A/B. The Debtor instead asserts that he relied on the advice of counsel that these garnished funds were not property of the estate.

19. Neither in the Debtor's prior chapter 13 case, or in the present chapter 7 case, has the Debtor ever filed amended schedules.

## **Standard of Review**

Summary judgment may only be entered where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56

Summary judgment should not be granted, even when the evidentiary facts are undisputed if conflicting inferences may be drawn from those facts. *In re T.I. Swartz Clothiers, Inc. 15 B.R. at 592.* Unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances, summary judgment should not be granted. *Phoenix Sav. & Loan, Inc. 381 F.2d at 249.*

**<u>Argument</u>**

In order to prevail on 727(a)(4)(A) discharge objection, the following five elements must be established: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related to a material matter to the bankruptcy case. *In re Belk, 509 B.R.513 (Bankr. W.D.N.C. 2014).*

Theres is hardly any dispute that the Debtor in this case made certain statements when he filed his two bankruptcy petitions. In fact, an omission in the debtor's sworn bankruptcy schedules and statement of financial affairs constitutes a "statement under oath" for purposes of Section 727(a)(4)(A).

The second element requires proof that the statements were false. The first bankruptcy petition filed by the Debtor, his chapter 13 case, was so riddled with falsehoods and omissions that even the bankruptcy court conceded in its oral ruling (Exhibit 2, Transcript of evidentiary hearing) after hearing arguments on Plaintiff's motion to dismiss debtor's chapter 13 case with prejudice that: "Okay. Here is what I see. I see a debtor who has lots of skeletons in his closet. And I understand your comment about the U.S. Trustee being all over this if this were a Chapter 7. I think you're absolutely right. But this isn't a chapter 7 case. It is a chapter 13 case." In the present chapter 7 case, while the falsehoods were not nearly as emphatic or blatant as in the prior case, they still exist. The Debtor's failure to disclose all

income during the six months preceding the bankruptcy filing was a false, as was

his failure to list his prepaid card, his failure to account for all his income on this

SOFA, and the failure to disclose that gambling loses during the one year

preceding the bankruptcy filing.

The third element, that the Debtor must have known that the statements at

issue were false when he made them is also easily met. What the Plaintiff

considered to be Debtor's falsehoods were articulated both in writing by way of

repeated pleadings filed by Plaintiff during the course of the Debtor's chapter 13

case, then in open court when the parties appeared for the evidentiary hearing on

Plaintiff's motions to dismiss with prejudice (exhibit 2), and then again, when the

Plaintiff wrote his 24 page brief to the District Court in which he argued to the

Appellate Court that a 100 percent plan does not give a debtor carte balance to do

anything he likes in his bankruptcy schedules. During the prior case, the Plaintiff

accused the Debtor of not being fully accurate in his schedule A/B (bank account

balances were lowballed), the means test did not account for the income derived by

the Debtor outside of his employment, the statement of financial affairs did not

properly answer question five, and the Debtor did not disclose his gambling loses

during the one year preceding the bankruptcy filing. The foregoing allegations are

nearly the same allegations made in the present case. If there was ever a time when

a Debtor knew or should have known what to look out when completing his schedules this was the case.

The fourth element, that the false statements were made with the intent to defraud, is met. Whether the debtor had the intent to defraud or deceive is a question of fact that the bankruptcy judge must ascertain from the facts and circumstances of the case. *In re Park, Adv. Pro, No 10-0237 (Baltimore Case)*. As the Park court explained, the court need not be convinced that the debtor acted with an express intent to defraud. Mere recklessness will suffice. A debtor who is reckless in his failure to ensure that he understood the questions in his schedules, a debtor who is reckless in his multiple misstatements can lose his discharge. In fact, a reckless indifference to the truth, as evidenced by a pattern of omissions and inaccuracies, is the functional equivalent of fraud in these circumstances. See *In re Johnson, 139 B.R. 163, 166 (Bankr. E.D. Va. 1992*). Because the Debtor in this case did not simply make one false statement, or even two, but rather engaged in a pattern of omissions and inaccuracies, there is sufficient recklessness for the court to infer fraudulent intent. In fact, the Debtor's failure to correct the errors and omissions in both of his bankruptcy filings by amending his schedules was "the essence of a reckless disregard for the truth." *In re Beauchamp, 236 B.R. 727, 733 (9th Cir. B.A.P. 1999).* In fact, a single, false statement, account, or oath is all that is required for the bankruptcy court to deny discharge under Section 727(a)(4)(A).

Nothing in the Code allows the debtor one free falsehood in his schedules, if such is knowingly and fraudulently made. See *Van Robinson v. Worley, 849 F.3d 577(4ᵗʰ Cir. 2017).* It is not necessary that the false statement prejudice creditors to be material. Fraudulent intent may be established by circumstantial evidence, or by inferences drawn form a course of conduct. After all, rare is the debtor that will admit that he acted with intent to defraud.

The final element, that the statements by the debtor relate to a material matter to the bankruptcy case, is also met.

### The "what difference would it have made defense"

Sprinkled throughout the MFSJ filed by the Debtor is the suggestion that to extent any errors or omissions exist in the schedules, they are relatively minor and do not change much in the grand scheme of things. There is factual truth to this assertion, but the defense lacks any legal merit. The purpose of the schedules is to ensure that there is adequate information to the debtor's creditors; there should be no independent duty placed upon the creditors to conduct an investigation to ensure that the information in the schedules and statements is true, accurate and complete. See *in re Wells, 426 B.R.579 (Bankr. N.D. Tex. 2006).* Stated differently and succinctly, when in doubt, a debtor is under a duty to disclose! *In re Halishak, 337 B.R. 620, 630 (Bankr. N.D. Ohio 2005).* If you have a minimal interest in a

pre-paid account then you must disclose. If you have an interest in over $12,000 in garnished funds you must disclose.

### The attorney made me do it defense

A debtor is not entitled to rely on counsel and must carefully review their own schedules and statements to ensure that they are truthful and accurate. *In re Vigil, 414 B.R. 743 (Bankr. D.N.M. 2009)*. As to facts that a debtor swears out under penalty of perjury, attorney error is not a defense.

### The "what happens in Vegas stays in Vegas" defense

The Debtor's MFSJ argues that the court need not consider what transpired in the Debtor's prior chapter 13 case. The Debtor argues any liberties that the Debtor might have taken with his disclosures in the chapter 13 case are not germane to the present chapter 7 case. The Debtor's legal argument is incorrect. As the bankruptcy court explained in *In re Haynes, 549 B.R. 677 (Bankr. S.C. 2016)* "although a false oath made by a debtor in a prior case cannot be grounds for denial of a debtor's discharge in a subsequently filed case, such filings are admissible evidence based on relevancy to determine whether the evidence tends to make a fact more of less probable." Stated differently, a creditor cannot "hang his hat" on falsehoods or omissions in a prior bankruptcy case in order to advance his case if absolutely no false oaths exist in the present bankruptcy filing. Conversely, a creditor can absolutely bolster his non-dischargeability complaint by highlighting

to the bankruptcy court that the Debtor made false statements not only in the present bankruptcy filing, but also in a prior case as well, thereby negating the typical argument made by debtors that "I simply did not know any better and this was an innocent mistake."

### The CMI should be construed narrowly defense

The Debtor's argument is that the means test in this case is accurate because all income was in fact disclosed and captured during the six-month period preceding the filing. This argument is false. As this court stated in *In re Wentz (24-11197-BFK)* "While the court does not expect non-lawyers to be conversant with the Means Test, the requirement to list income from all other sources for the six months preceding the filing is plain enough." As for the question of whether the proceeds from the sale of cryptocurrency must be included in the calculation of current monthly income for purposes of the means test, the court in *In re Clark, 25-00984-5 (Bankr. E.D.N.C Dec 01, 2025)* concluded that the answer is "yes." The analysis hinges on whether the amount in issues is in fact income. One thing that is clear is that income, for means test purposes, current monthly income (CMI) is calculated without any regard to whether the money received is taxable or not. Ultimately the court in Clark concluded that while the sale of personal assets may not constitute income for CMI purposes, income derived from investments, royalties, or gifts is income. As such, when considering the body of case law, the

court concluded that gains realized form the sale of an investment asset during the

six months prior to filing must be included as income for purposes of calculating

CMI.

### One strike and you are out!

Being untruthful with his answer on question 5 of the Statement of Financial

Affairs is all that it took for the bankruptcy court in *Fitgerlad, III vs. Vanvonno*

*(Case no 21-10593 and Adv. Case no 21-00137 and 21-00161)* to conclude that

the Debtor was not entitled to a discharge. In the Vanvonno case the issue that took

center stage was whether the debtor's failure to properly answer question number 5

is the statement of financial affairs was enough to deny the debtor his discharge.

The court answered that question in the affirmative. As the court noted, question 5

in the statement of financial affairs is plain and unambiguous, and commands the

debtor to disclose all income of any type, whether taxable or not during the year to

date that the debtor filed for bankruptcy as well as the two preceding years. Nor

was the court impressed by the advice of counsel defense noting that the court

must still consider whether the debtor acted in good faith. Debtor has to prove that

he provided the attorney with all the necessary facts and documentation. Likewise,

the advice of counsel is no defense when it should have been obvious to the debtor

that his attorney was mistaken. The fact pattern in this case is no different. It is

undisputed based on the evidence in this case (the bank statements) that Debtor did

not disclose all his income in 2023, 2024, and 2025 on SOFA. That in and of itself, is enough to deny the Debtor his discharge. And when considering that this was not the Debtor's first rodeo, and that this specific issue was raised in the Debtor' prior chapter 13 case the Court should not hesitate to do so.

## CONCLUSION

The central question that the court must answer is whether a reasonable trier of fact, viewing the evidence in light most favorable to the Plaintiff, could find that there is no need for a trial on the merits since it is patently clear from the evidence that the Debtor no only made no false statements or omission, but also, to the extent that the Debtor did, that he lacked the fraudulent intent necessary to deny him a discharge. Viewing the evidence in light most favorable to the Plaintiff, it is clear that the Debtor's MFSJ must be denied.

/s/Robert S. Brandt

Robert S. Brandt, VSB#46196
600 Cameron Street
Alexandria, VA 22314
703-342-7330
brandt@brandtlawfirm.com
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2026 I filed the foregoing

opposition to the Debtor's motion for summary judgment with the court

using CM/ECF.